May it please the court. My name is Raymond Lo. I represent the detained petitioner, Mr. Hao Lin. I'll like to reserve two and a half minutes. The issue of this case in front of this court is whether or not the petitioner established his claim for persecution, past persecution, based on his religious belief in China. In the immigration court, the judge deemed that he was credible. He deemed his testimony, he deemed his documentation, he deemed everything was credible. However, the judge denied his claim for asylum because the judge believed that he did not meet, his persecution did not meet the standard stated in this district. Based in the Ninth Circuit, there's two cases that currently are being used in immigration courts to decide persecution in China regarding Christian claims. They have Gao versus Ashcroft, which is stated 361 F3D, and Gu versus Gonzalez, 454 F3D. However, recently, last year, the Ninth Circuit decided a new case, which is again, Gao v. Sessions, 8973D. Now, the immigration judge in this case was decided in 2017. They looked at the claims, they looked at the circumstances in Gu, and they looked at the circumstances in Gao, and the judge decided, well, because the petitioner did not suffer enough injury during his persecution when he was detained, interrogated by the Chinese government for 15 days, that he did not meet the past persecution. We believe that in light of Gu versus Sessions, and now Gao versus Ashcroft, when you take those two cases together, it seems more inclined that this case should be considered towards those decisions. The petitioner in this case was detained for 15 days. He was forced to run to get food to eat while he was detained. The guards made him run. The guards made him say, if you don't run, you don't get food. And during that time, the guard also made other inmates beat him, and the guard, I believe, kicked him once or twice. In light of that, also include when he was detained by the police and this case versus the two Gao case, the petitioner met his burden for past persecution. And by meeting his burden for past persecution, he also meets his burden for a well-founded claim of future persecution if he were to return to China. Well, there's a presumption that arises. If he demonstrates past persecution, there's a presumption of future persecution, which the government has an issue with that. So regarding future persecution, I guess, what effect do you think it has that he was, once he was released, he was allowed to continue to practice, that he returned to that house church and he was not persecuted while he was still there? Well, that's a good question. He returned to his house church only twice in the next six months. Prior to that, he went to his house church 15 to 17 times. So his ability to practice freely diminished after he was released. But he did testify that the house church continued to hold meetings even in his absence after he was released, correct? Yes, that's true. But his own ability to practice, whether or not the house church had meetings or didn't have meetings, he wasn't felt safety enough to be able to go. Before he was going, he was a member, he was passing out flyers. Due to this incidence and the warning, they actually gave him a warning before he was released. It was in the record, and he stated that the police gave him an indirect warning. You better not get arrested again. Yeah, or something, it won't be so simple or something like that. If we were to agree with you as to pass prosecution, what's your request to us? Well, my request is that the petitioner right now has been contained for almost a year and a half and released by ICE. We want the judge and this court to remand the case back to BIA and have BIA also remand the case back to the immigration court. If you look at the BIA decision in this case, it's basically they just rubber-stamped the immigration judge's decision. They didn't do any additional analysis. They didn't look at any of the arguments that the previous counsel argued in the brief. They just said, oh, based on the judge, we agree with the judge. There's no fact-finding. There's no analysis. There's no review. There's nothing. They just agreed, and they just kicked it, and then they agreed with the judge. We believe that the right remedy in this case is to remand the case back to immigration judge, I mean remand the case back to BIA, have BIA remand the case back to immigration judge for a hearing. Also a point that this court should kind of consider is that throughout the testimony, the petitioner did mention that he suffered psychological harm. I think in the immigration judge's decision and in BIA's decision, they said that, well, the petitioner is at fault because you didn't present any evidence of psychological harm. Now, bear in mind, the petitioner was detained in January of 2017. He was in detention throughout the whole proceedings. This hearing happened in about April of 2017 with the decision made in May of 2017. So the ability to have the petitioner to seek psychological evaluation in detention in three and a half months, that was very difficult for anybody to do. And we believe that this is an argument that the petitioner should be So is that the primary reason you want to go back to the immigration judge? There's certainly a lot of information in the initial record. As you said, the immigration judge found him to be credible, listed a number of, talked about the beatings in the jail and the treatment by his fellow prisoners. So all of that's already in the record. So why do you want to go back to the immigration judge? Because the petitioner made the argument he established, but then the immigration judge and BIA said that, well, that's not enough to prove persecution. So if that's what they're stating, then if you want more evidence, give us another chance to have a psychological evaluation. You can't hold the petitioner for not presenting psychological evidence when he didn't have an opportunity to do so. So that's the primary reason you want to go back is for the psychological evidence, to have time to present that? If, I mean, if we have a chance, if he is released, but he's detained. But do you think he needs evidence of psychological harm to demonstrate past persecution? I don't think he needs it. He only needs it if the government or BIA is going to want that to prove. But like I said earlier, I believe that this court's and Gao versus Sessions, that he already met his burden. So in light of the totality, we believe that this case should be remanded and he should be granted asylum. All right, you have two minutes, so you can reserve them for rebuttal. Good morning, Your Honors. Thank you for having me. Joe Spokano on behalf of the Attorney General. The obvious issue in this case regarding past persecution is whether this court's 2018 decision in Guo controls this case or whether it can be effectively distinguished from the facts in this case. Obviously, this case, the Guo case, should have been briefed by the government. When it was reassigned to me, I filed the 28-J as soon as I reviewed the oral argument. In any event, so how is this case different from this 2018 Guo decision? So most notably in Guo, the court focused on the fact that Mr. Guo was forced to disavow his faith by signing a letter of guarantee, and he was forced to check in with the police on a weekly basis. He was also continuously threatened by the Chinese police that he would be arrested if he did go back to the How long was he in custody? Mr. Guo was in custody, I think, for two days. And how long was Petitioner here in custody? 15 days. But the distinguishing factor here is, as the court noted in Guo, it was an ongoing sort of persecution because of these weekly check-ins, these weekly threats. So here, Mr. Lin was detained by police for disseminating Christian materials outside of the house church. He was held for 15 days and not to minimize the harm that he suffered in this case, but they were, in terms of persecution and the idea of it, it was relatively minor. We're talking about open hand slaps to the face, and I think there was between four and six times that he was kicked by police. But wasn't there a letter submitted by the father saying, if he goes back, he needs to report? What would be the purpose for that? It absolutely was a letter, but his father did not, it was very perfunctory. His father did not explain why he would need to report. It could just be a check-in, but again... But doesn't that, given the other evidence that was presented of persecution and the issues, doesn't that raise the specter that they want to keep track of him and what he's doing? It's a reasonable inference, but if you look at his statement, again, it doesn't say why, but also take into account the fact that Mr. Lin went back to the church. He went back to the church on two occasions voluntarily. Right, but he had been warned not to, and he took considerable risk to do that. I guess the thing I'm wondering is, okay, Guo had similar circumstances, and we deem that persecution. And so his authorities, which I've seen in other cases, it's not uniform. The authorities, the government authorities required him to sign a statement and report back. But it's not necessarily true, based on country condition reports, that every government, persecutors or police, handle the situation the same way. Why is giving a warning, which has the effect of diminishing his ability to practice his faith, not equally persecuting? Are you saying that we have to find... Only in cases where there was a reporting requirement can they establish past persecution? I mean, we definitely haven't limited it to that in any way. I think that's where this case differs from Guo. And so if you take into account the Gu case from 2004, in that case the petitioner had to check in, I think, four or five times on a weekly basis. But eventually the Chinese police lost interest and he didn't have to check in anymore. And so the court took that into account when it denied the petitioner for review. So returning back to these facts, again, he never testified before the immigration court that he had to go back and check in. Not to mention the fact that he voluntarily went back to the church and he had no problems whatsoever with the Chinese police. Add to that the fact when he said he didn't go as frequently to the house church, he was asked why. And he said his parents, he had religious differences with his parents. And so his parents were being more strict. So when he was... No, go ahead. Okay, sorry. So when he was asked why he didn't go more frequently, he said, and I can cite it to the record here for you, it's at page 100. He said, my parents were being more strict and they had religious differences. So it was causing a problem. Counsel, if we were to disagree with the government on whether the harm suffered rose to the level of past persecution, what is the government's view of what the remedy should be? The remedy is, petitioner is correct on that. The remedy is that it has to go back because petitioner is afforded the presumption of a well-founded fear of future persecution. At which point the DHS will attempt to rebut that presumption. Technical procedural question. So if we remand to the BIA, does the BIA automatically remand to the IJ, or do we have to put in specific instructions to remand? I mean, with the district court, we might have to put in specific instructions. Right. I don't know the answer to that question. I can't find out. If there's going to be factual findings... If there's factual findings, it would have to go back to the immigration court. Yeah, but the board would do that. They would do it just to allow DHS the opportunity to rebut that presumption. So it would have to go back, and the board would issue an order to that effect. And so that also takes me to the agency also made an objectively determination regarding the fear of future persecution, and I think that's even stronger. Again, if the court disagrees and holds that Guo is obviously controlling, which we disagree with, then it would have to go back. But if the court does not and agrees with or at least defers to the agency's past persecution determination, there's also this future persecution determination that's even stronger. So, again, there's evidence in the record that some house churches were even bothered less so in China, as long as those house churches remained small and kept it to a minimum, basically. And so you add to that the fact that the leader of Mr. Lin's house church, he went back to practicing on a weekly basis. He continues to hold religious gatherings weekly at his house. He was also one of the people who was arrested and also detained for 15 days with Mr. Lin. And so he has not stopped proceeding with his religious activities. Also, when he was asked, Mr. Lin said, he was asked this twice, and he said, definitely. He said, when you go back to China, would you be able to practice your Christianity? And he said, definitely. And he said it twice. He was asked twice. That was at 142 of the record. In the end, Your Honor, the government believes that the record does not compel the conclusion that the agency was wrong in this case. And unless there's any questions, the government believes it should deny the petition for you. All right. Thank you very much, counsel. Thank you, Your Honor. Your Honor, just one clear clarification. In Gu, the facts were that the person who was passing out the flyers was interrogated for two hours, beaten, and released on the same day. There was no detention, and he kept his government job. He was a government employee. In this case, it's a big difference. This gentleman was detained, arrested for 15 days, made to run for his meals, and suffered a couple of beatings in that time. So Gu does not – I mean, Gu Gonzalez does not apply to this case. Gu should apply to this case. Thank you. All right. Thank you very much, counsel. Lin v. Barr is submitted.
judges: Wardlaw, Cardone, Bennett